Thank you, Your Honors, and good morning. May it please the Court, Carter Siu, Deputy Attorney General for the State of Hawaii, here appearing on behalf of Appellate Department of Education. The issue to be decided by this Court is whether the District Court erred when it decided to stay put based on an unpublished memorandum opinion issued by this panel in a prior case. I'll refer to that prior case as the Five Oaks case because that decision had to do with a 2000 IEP placing the child at Five Oaks residential facility on the mainland in Texas. It's a prior case, but it's the same parties, right? Yes, same parties. Here, the District Court ruled that issue preclusion applied because this Court stated so. Even though it was in a 2007 IEP, it ruled in a case not before it pertaining to a 2008 and then a 2009 IEP. The main problem with the District Court was that we don't believe that it thoroughly considered the fact or went to the proper analysis to determine whether the issue of stay put for the 2008. At this point, what is your position as to where the stay put is in this case? To be very technical, stay put would be at Five Oaks. Well, not to be very technical. Where is it? Stay put would be, based on the law, it would be at Five Oaks. However, because there's an IEP that says he's no longer appropriate there, stay put – well, let me step back again. The proper analysis for me, and I think the proper analysis for these cases is to determine who is a moving party asking for stay put. Usually it's the parents. They have to prove stay put is at Loveland. They have to prove that Loveland is the current education. I asked you a question. What is your position about where the stay put is? Right now, there is no stay put placement. First of all, that's not the position you took in your brief. To be technical, it should be Five Oaks. But since that time, it has been determined that Five Oaks no longer applies to this child's needs. This child's needs aren't severe enough that residential placement is required. In subsequent years, in this case, in 2008 and 2009, the IEPs offered placement at his public home school, which is Baldwin High School on the island of Maui. That is what – Now, let's for the moment assume that there is a collateral estoppel here, just to analyze it as if we were starting from scratch. Okay? The Department and Judge Ezra and the parents all treated Loveland as the stay put through the 2007 proceedings. Is that true? Yes. In the Five Oaks case, there was stay put pursuant to settlement agreement in 2006. Placing – Well, that settlement agreement, unlike the one in KG, specifically said that that was a placement. And moreover, there – and also, you don't – you never put that agreement in the record. So your position about that agreement is kind of irrelevant because it's not even in our record. Well, we agree that it did place the student there. He was placed there. So it's not like the KD case in which the entire point was that he was never actually placed there. Correct. All right. So his last actual physical placement was – and agreed upon placement was at Loveland. At this time, based on the decision in Five Oaks, the last agreed upon placement is Five Oaks. All right. So then we get to the Five Oaks decision, which we declared – we said that issue was moot because of – and in part on reliance on the government's position at the argument in that case that you were not taking the position that Five Oaks was – had any collateral consequences. You said at that point that the stay put order would be the Maui High School, and that couldn't be because it was never agreed to be there, but you never took the position that the stay put was in Five Oaks. You said it wouldn't have – that that would not be a collateral consequence of declaring the case moot. Well, I think that just highlights the problem that we have here, that the issue was never fully briefed and litigated at that level. All right. And then you didn't file – and then if you had a problem, nobody ever filed a hearing petition if we were wrong about what we said. Correct. Once the issue was dismissed as moot, the position that the Department takes, that basically changes. That's a – the offer of fate by the school was validated. Because it's – How could it be validated when what we decided was it didn't matter anymore? Well, the last standing order and judgment in that case was by Judge Ezra finding that the Department of Education did offer a fate by offering – If we had vacated – officially vacated that order instead of vacating it by implication, that would have changed everything. If it was vacated and remanded, yes, it would have. It wouldn't have been remanded. It just would have been vacated. Well – Our whole point was that it was – it didn't matter anymore. There was nothing to remand. Well, as it stands now, the law in this jurisdiction gives us little guidance. And then we have the KD case, which, although we've already established it is not similar because of the settlement agreement issue, it is similar in the sense that it tells us about the current educational placement, unilateral special education placement. But this wasn't unilateral. This was – okay. And not only that, there was actually an ALJ opinion affirming her placement in Loveland at some point, wasn't there? Before – And Judge Ezra specifically found it wasn't unilateral. I'm not sure what happened before the settlement agreement in 2006. No, I thought it was during the time of the settlement agreement, during that period. Since the settlement agreement, the DOE prevailed on the 2007 IEP, placing him at five votes. Right. Thus far, we have prevailed on the 2008 IEP, placing the child at Baldwin. In 2009, we have prevailed at the administrative level. It has been appealed to the USTC. We have prevailed on that issue as well. It was remanded back down for a discrete issue, whether the placement was actually offered. It came back up. It didn't prevail. It was remanded. Only for clarification. All the issues on appeal by the parent, they were dismissed as baseless, basically. Let me come back to a question that I think you answered, but I want to make sure that I got it correctly. The initial placement in Loveland was not a unilateral placement. Is that correct? I'm not sure of the history of it, but in 2006, there was an agreement to place the child at Loveland. The reason I'm asking this, or what prompts my question in this forum, is I'm reading footnote three from Judge Ezra's order. Judge Ezra writes, it's unclear to the court, and apparently to the parties in this case, which specific state agency placed Marcus at Loveland. And then he writes, however, it is clear that Marcus was placed at Loveland by the state and not unilaterally by his parents. I'm not sure of the history of it, but in this case, do you agree with that second sentence that I just read you from Judge Ezra's order? As I stand now, I have nothing to dispute that it's false. That's a rather cautious statement. Yes. Do you agree with it? Is Judge Ezra right when he says that? I would agree with Judge Ezra, then. Okay. Yeah. But what brings this case into the ---- Just to clarify, then. You're not arguing that this is like KG. You recognize it is not. And therefore, if we were starting from scratch, your only position is that the order the Five Oaks order stood even though we would declare the case moot. I mean, is that basically right? Yes. And moreover, you're not arguing that Five Oaks is actually the state put order at this point, because you recognize that time has moved on and that there's no reason to go back to KD. And so you're saying that this case wouldn't make any sense to actually send him to Five Oaks. Correct. But as we ---- well, as we look at it, if he agreed to placement at Five Oaks, we would have paid for him to attend Five Oaks. But this case is similar in some respects to KD, because in KD it tells us when a unilateral special education placement begins and what happens there. And it also discusses state put ---- But you just agreed that it was never a lot ---- it was not a unilateral order, a placement, unlike in KD. It is a unilateral special education placement because the Five Oaks case was affirmed in favor of the ---- by Judge Ezra in favor of the DOE. And if you look at that terminating Loveland's state put placement, that decision by Judge Ezra, that is now the agreed-upon placement. And if your predecessor had stood up in the prior argument when asked whether Five Oaks was ---- whether there was a collateral consequence from the Five Oaks order and said yes, because it will be the state put order, that we would have left that order in place or that we would have declared it ---- would have declared the case moot? I'm not sure ---- Instead of saying otherwise. Well, at that time, there was no KD decision to guide us since oral argument. And again, it's ---- it just highlights why this issue wasn't briefed. Am I correct that you took this position before the KD decision came out? I looked at the dates. It looked to me like that was the case. Just barely before. I think I ---- I think the decision to terminate state put payments was made prior to the KD decision.  prior to the KD decision. And I think that's why the decision to terminate state put payments was made prior to the KD decision coming out. Right. So it wasn't the KD decision that changed your mind. But I think the KD decision validates our position. Because of the Five Oaks decision, it terminates state put. Again, it is the parent's obligation and the student's obligation to establish that Loveland continues to be the current educational placement. And in this case, when the DOE has done its job under the federal law and has offered a proper fate, including placement, regardless if he's there, placement at Loveland is cut off. And again, the KD case says it's not about placement. He can stay at Loveland in the KD case. He can stay at Loveland all he wants. It's a matter of who's going to pay for it. And again, it's about payment, not basically placement. There are cases that I don't know. I'm not sure where they are here. But Big Head had no placement. But it doesn't matter. For state put analysis, it's who's going to pay. Of course. Let me ask you this. Maybe this is off to one side. But I was somewhat puzzled just as a, not now a procedural matter, but as a factual matter, how it could have been the case that at one point the state agrees with, it turns out the father is initiating, that a more restrictive environment is necessary. So that a move to, well, first they thought Santa Barbara. Then the state says Five Oaks. But a more restrictive environment is what the state agrees to. And it's going to send them to Five Oaks. And then the parents don't like it. But then it turns out, even as the legality of the Five Oaks order is being litigated, the state goes not just, well, you know, a more restrictive environment isn't appropriate. So we better leave my loved one, which is kind of halfway. They go all the way in the opposite direction to say that, well, you know, he can go to public high school. How do we move so rapidly from more restrictive is necessary to less restrictive is appropriate? I think Judge Ezra in his decision kind of hits on the issue. Well, he doesn't really. I mean, he says the only evidence I have in the administrative record is the evidence that was somewhat artfully presented by the state to support the Five Oaks placement. But he doesn't really get at, okay, what is going on here as to why the state is changing its position. I mean, we're moving from one pole to the other over the space of less than a year. I can't imagine that the progress of Marcus was so substantial in that short a period. Well, in this field, it is very – the schools are required to review annually the IEPs. And within one year, there can be substantial gains made. For instance, there could be in one year speech that's required for X amount of minutes per week. The following year, well, we look at the data, and the data says the speech actually worked. The therapy you gave him has worked. So therefore, the next year, he doesn't need it. We've given him all he had. He's at a point where he doesn't need it anymore. So the next year, you take it off. The same with residential. The IEP team must have had data supplied by Loveland to say that since he was at Loveland, he must have had data to substantiate the need. I mean, I'm sorry, substantiate that. Yes. You have about a minute left, and you've been talking about everything in the case except, you know, what's wrong with Judge Mulway's stay put order. Isn't that what you're appealing? Yes. Yes. First of all, is she not bound by the prior Ninth Circuit disposition? I don't think she is. Why not? Isn't that a flat-out statement by the circuit? It is a flat-out statement by this Court. You're just saying it wasn't well considered, huh? Well, yes. But it's also because I think it's in a different case. The matter wasn't before this Court as an issue. Collateral estoppel is always in a different case. Excuse me? Collateral estoppel is always in a different case. Regarding, well, this is a different IEP, a different circumstance. Everything is different in this area of law. My thing is that Judge Mulway, when she decided it, seemed to be hesitant that the matter was actually litigated, briefed, and thoroughly discussed, not only in paper form, but in theory. She didn't have the transcript of the oral argument, which this was basically all that was discussed. She did not have the transcript that I can tell. Her decision did. I mean, it doesn't matter what she thought, but if you read the actual oral argument, I mean, it was certainly discussed at some length. And if you had any problem with it, you could have filed a PFR afterwards. I'll just say that it wasn't briefed. I'm not sure how it kind of arose. I just basically just reading the ---- It arose. It's very obvious why it arose. It arose because the question was, was that case moved, and that depended on whether there were collateral consequences. And therefore, what the collateral consequences might be became an issue and was discussed at some length. But again, in the memorandum decision, it did say in the first paragraph, you know, it ---- statement must end however it ends. So that was contemplated that it would end. Now, your time has run, but let me ask Judge Toshima whether he's yet heard a full answer to his question. Don't worry. I'll give you a chance to respond to the State. Don't worry that your time has run. No, go ahead. Okay. Well, why don't we hear from Mr. Bennett, and then we'll give you a chance to respond. Thank you. Mr. Bennett. Yeah. Thank you, Your Honor. This ---- you know, I recall fairly clearly about the hearing on February 17th. The Court asked the parties to prepare to discuss the mootness issue prior to that, and that was with Deputy Ushiro. And, of course, he ---- from my recollection, he generously argued the same kind of positions that this deputy is, that there is ---- that a State put would be, you know, either pursuant to Judge Ezra's order as the last degree upon placement or at Baldwin. Well, he did argue that. Excuse me. If he had argued that, I would be more concerned about this case. He never argued that. He never argued that State put would be. And, yes. But, yeah, again, he ---- the Court, you know, ruled correctly that State put would be, in fact, at Loveland Academy. The State's withdrawal of their ---- of their intent to place Marcus at 5-0 school basically put him back at Loveland Academy. It nullified their IEP placement decision. That was before a final judicial decision was made. The deputy keeps stating in his brief that he won the case in front of the Ninth Circuit, that the Ninth Circuit ruled in the State's favor.  If you look at the state court order, of course, the panel found that the case was moved because the State had essentially withdrawn its proposition to move placement from Loveland to 5-0. And that was challenged. Mr. Bassett, let me ask you just about the theory and purpose of a state court order. It's almost like a TRO, right? In other words, it's supposed to keep the situation as it is until the end of the case. Yes. Is that correct? That's correct. All right. Now. That's correct. Under 20 U.S. Well, let me finish my question, though. So when the case ends, as the case in which the State put order was issued, doesn't the State put automatically dissolve? The State put is attached to any judicial or any administrative proceeding automatically. It acts as an automatic injunction. It is not, as the State proposes, the parent's obligation to prove that State put exists. It comes into existence automatically upon the filing of the administrative review of a substantive issue. And does it also then dissolve automatically when the case is over? That's correct. When the case is over through appeals pursuant to the Joshua A. decision. But because these cases last sometimes years, as this, for example, there will be multiple they may be multiple requests for due process and multiple State put issues. And when one State put issues, if there is another pending administrative hearing, that whatever State put decision is evolved from that last judicial decision, that would be applicable to the underlying decision. In this case, we had a moot decision. Go ahead. Yeah. And there was no final administrative decision making a placement. Judge Ezra's decision was found to be moot or non-applicable. The State never agreed to that in finality. I have a question. This is a problem. So therefore, the end. Can I ask a question? Yes. Yes. All right. This is a slum it out of the box question, but is it clear under our case law that the State put persists after the administrative decision? In other words, isn't it possible that what the statute really meant was that the parents get at least a shot at the administrative hearing before the child gets moved or his placement gets transferred, but that at that point the State put ends? Is there any case law addressing that question, whether the State put continues through all of the judicial proceedings? Yeah. That would get us to Joshua A. V. Rockland. I think I cited that in my case, that the State put proceeds through the termination of all appeals. Okay. Thanks. So, but, of course, the finality, when the NYSERDA was to issue a memorandum decision in here, that terminated the proceeding. That would terminate the State put under the Judge Ezra's case ending in 481. But there was an underlying case there that was addressed by this panel and Judge  And that was the case for Loveland Academy, because this underlying case was found to be a nullity. State put was, again, recognized, or there was a preliminary injunction for State put in that case for Loveland Academy, because that was the last agreed-upon placement. The State says at one point. My votes was not the last agreed-upon placement, nor was Baldwin. The State says at one. Your Honor. The State says at one point that there is an unchallenged, I think May 2010 maybe, or an order that it says has never been challenged and that whatever else may be the case, it's not the case. And the State says at one point that there is an unchallenged, I think May 2010 maybe, or an order that it says has never been challenged and that whatever else may be the case. And the State says at one point that there is an unchallenged, I think May 2010 maybe, or an order that it says has never been challenged and that whatever else may be the case.   I have a brief history of the Chief Justice at Honani-Ohm, and that was DOE Case SY-1011-066. She placed Marcus back at Loveland Academy for the 2011-2012 school year. So he actually is placed back there, whereas now it's the 2012-2013 school year. So a lot has happened since then. So technically he's been replaced back at Loveland by a hearing officer. That decision was not appealed. So Marcus was – a hearing officer did, in fact, place Marcus at Loveland in a 2008 decision. That was Rick Young. We found that Loveland was an appropriate placement for Marcus. And again, the – So how many months' payment are we talking about? You're correct to say – How many months' payment are we talking about? They stopped paying in December, and you're saying that he's been replaced there and not challenged as of when? In other words, how many months' payment are actually – I don't – I don't – yeah, when I wrote this – wrote my – the reply brief, the State had not been making payments on – on safe – and I filed a motion for contempt. I know, but I'm asking, as of now – And just prior to the hearing on – As of now, how many months' payment are we talking about? Is the State behind? No. The State – I mean, the State has – I mean, if – so if we were to say that the State – there was such mullway order that they paid. They've been paying. Now you're saying that whatever we do now, they're going to have to continue paying, as I understand is what you're saying, because Loveland is now his – his last placement. Is that what you're saying? Yeah. So whatever we do now isn't going to matter? No, that – that's not – that's not entirely correct. There is no judicial proceeding underlying right now. So he is currently in State court. Mr. Bassett, just a minute. You reminded me that several months ago there was a contempt hearing to be held, right, before Judge Mullway? Yes, that's correct. Did that hearing take place, and what happened? That – well, just prior to that hearing, the State agreed to make payments, so Judge Mullway found that motion to be moot. And so the State is current in their payments, and there is no underlying State foot at this time, so this – this is still a live – this is still a live controversy. Marcus requires we stay put in this matter through the proceedings, because briefing has been completed in the underlying Mullway matter, and I believe we're going to be in a hearing in February on this case. Just a minute now, Mr. Bassett. Two things you said seem to me to be somewhat contradictory. First, you said there is no longer any State put in place in this case. Did you say that? No, in the under – in any underlying matter. In this – in this matter, there is no State put. In any matter. In this matter. What about in this matter? Well, in this – no. Apologies if I misspoke. There is State put in this matter. I had not filed for Marcus any administrative hearing challenging the 2012-2013 IEP. All right. But there is State put in this matter. And that's the State put that the State is appealed right now. The State is appealing, yes. The State put in this one, correct. Now, as a policy matter, what the State says is the way that you're interpreting the statute, there is an incentive for parents to continue to challenge everything because that means that the last State – the last placement, the one they liked, remains in place and it can go on for years and years, which is what seems to be happening here. Is there a response to that? Well, the – there may be an incentive. That is not the situation in this matter. The – when the case went in front of Judge Mulway, and Judge Mulway remanded it back in May of 2011, it was a long time ago. You know, I advise a court that on a remand, it's going to take over a year to resolve that one issue, and that I wanted her to issue a decision in finality to move the case forward. Nonetheless, she decided to remand it back. That wasn't the decision of the parent. That was the decision of the court. So it's not – I mean, it's not that the parents are – Your Honor, yeah, it's – again, it's not – the parents, they have no control over the length of these proceedings, and so the fact that this has taken an enormous amount of time is because of the State's legal maneuvering and withdrawing their placement at 5-0. So the parent could have very well found that the placement at 5-0 was appropriate back in May of 2011. That would have ended the State put. It would have been over. So he would have been placed at 5-0. And so the parent has a right to challenge the inappropriate offer of placement at Baldwin School through the pendency of the action. And a hearing officer has concurred with me that that offer of placement, along with Judge Ezra, that the offer of placement at Baldwin High School is not appropriate. So the State – Wait. When did the State – in this underlying case, is that what the hearing officer decided? In this case? No, not in this case. No. That was in DOES 1112-0066. Not this case. It's a subsequent administrative hearing. Now, I'm reminding you – The hearing officer in this case found – No, go ahead. You were going to answer the question I was about to ask. The hearing officer in this case found – The hearing officer in this case found – The hearing officer in this case found that Baldwin was an appropriate placement. Oh, no, no. In this case, a hearing officer found that Baldwin High School was an appropriate placement. In answering the remand questions as well? In answering the questions on a remand as well? And on the remand, yes, she also found that Baldwin was – well, that Baldwin was, in fact, offered and that Baldwin High School was offered and that Baldwin could implement the 2008-2009 IEP. And is that order that you're – and is that order of the hearing officer that Baldwin is an appropriate placement, is that order that you're appealing to Judge Mallway? Am I correct? That was – yeah, that was the order that's going to go in front of Judge Ellsway on her 12-0342 matter, the D.C. case, yes. And that's the same case in which she issued the stay put order. That's correct. Okay. Thank you very much. You're – you've given us five seconds. Mr. Shields, why don't we put one minute on the clock and we'll see what happens? But we do want to give you a chance to respond. Thank you. It would be helpful to me. You commented in your brief, and I'll give you an extra minute, that the – that there was no appeal from – or no challenge to, I think, a 2010 order, and you implied that had some significance. What's the significance of it? In an unchallenged IEP, basically, if it's unchallenged, it stands as a valid offer of faith and a valid offer of placement as well. Now, whether or not he goes and attends and takes up the offer is irrelevant. I think in KD and in this case, plaintiff's counsel – excuse me. So what is the exact consequence, that as of when was there no obligation? Because of that, leaving everything else aside, in your view, when did the State put switch and, therefore, there was no obligation to pay any longer? In – I'm not sure I understand the question. But in 2010, the IEP was not challenged. It cannot be challenged. It's after two years. It stands as a valid offer of faith. Now, it has no application to the – to this case. It has no application to this case. No. But what's the practical consequences? You've been paying. Are you going to try and get the money back from them if you prevail? I have argued that we can obtain the money back. We saw – I have argued that we couldn't. I have asked for a stay of payment because of the irreparable harm of paying. I cited cases from New York and all these other jurisdictions that are saying we cannot get reimbursement from the parents or from the school. Judge Moway said that doesn't apply to the Ninth Circuit. So she kind of just refused to hear my arguments on that issue. So as it stands now in Hawaii, the issue of getting money back from the parents is unsettled. In fact, Judge Moway left the door open for us to challenge. You certainly couldn't get any money back from before November 2011 because up until that point, you were paying voluntarily, or at least without challenging it. Well – So the earliest that you could have a problem is November 2011. Arguably from 2000, from the offer of FAPE in 2007 at Five Oaks, we've – I mean, basically it's validated. Everything we've done has been validated. But you continue to pay all the way through that period. It is pursuant to stay put. Because – It's pursuant to stay put. Right. Yes. So the issue of reimbursement under stay put isn't settled. I mean, reimbursement to the State. But not pursuant to any order. You just paid. There was no stay – I mean, Judge Ezra expressed the view that that was the stay put order, but you never suggested otherwise. And again, earlier I agreed that there was stay put. I don't think that there needs to be an order of stay put necessarily in every case. I think there was a recognition at that time that stay put did apply. Right. Subsequent to that, I think there's a need for a judge to determine whether or not the current educational placement remains at Loveland. So now, I mean, it's simple as it seems, stay put. Right. And it's very complicated. It's a very in-depth factual analysis. There is some period before November 2011 for which you could possibly get some reimbursement. I can't imagine us getting reimbursement. I don't – I can't imagine us getting reimbursement of – I guess right now it's over a million dollars from a parent. I think that's just – I don't think any judge will do that. That's practically – I'm talking even theoretically. I don't understand it. Before November 2011. To be honest, it is very unsettled in our jurisdiction. I'm getting mixed messages from the Court back at home. Again, I cited all this law that says I cannot get reimbursement of stay put payments made, so therefore, if I pay, it harms the State. The judge said that's not harm because who's to say that you can't get it back. So right now, I don't know. I don't know. I don't know. To be honest, I don't know if it's allowed. Now, to address Judge Teshima's question earlier, Judge Maui, it's clear from her decision that she did in fact do her own independent research. And after doing her research, she still thought it wasn't – it may not have been thoroughly litigated at this level or even briefed. And under Eureka, the case I said in my brief, it says if she had any hesitation or any doubts in her mind as to whether collateral estoppel applied, she should have erred against applying it. Well, are you saying that the application of the doctrine is discretionary? It seems from Eureka it is discretionary based on the feelings of the judge. If the judge felt that the issue wasn't thoroughly litigated or she had any doubts in her mind, then she does not have to apply collateral estoppel. And in fact, in the Eureka case, it goes a little bit further, and it talks about it's inappropriate to apply collateral estoppel when its effects would be unfair. And in this case, it is patently unfair. We've offered a FAPE under the Five Oaks IEP. We paid state court for over four years. Over a million dollars has been paid. But you're not taking the position that the Five Oaks was the state flood, so I don't understand that. Again, I understand. I understand. That's why this is very difficult. Very factual analysis needs to be done. But again, we rely on KD before this Court to say that it's about payment, not placement. Okay. Thank you very much. Any other questions? Thank both Mr. Bennett and Mr. Seale for your arguments. Thank you. The case is now submitted, and we're adjourned. Thank you. Thank you, Your Honor.
judges: Tashima, Fletcher, Berzon